**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SURFACE IGNITER, LLC, ) | Case No. 1:13 CV 1599 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| STEPHEN J. RADMACHER, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant's Motion to Compel Arbitration, Alternatively Motion to Stay ("Motion") (**Doc #: 3**). Defendant Stephen J. Radmacher asks the Court to issue an order compelling the joinder of this case with a pre-existing arbitration involving virtually the same claims Plaintiff Surface Igniter, LLC ("Surface Igniter") has raised against Bond Ceramics Manufacturing and Equipment, Inc. ("Bond Ceramics" or "Bond"). Alternatively, Radmacher asks the Court to stay this case pending the outcome of the pending arbitration.

The Court has reviewed the Motion, Surface Igniter's opposition brief (Doc #: 6), and Radmacher's reply brief (Doc #: 7), and **GRANTS** the Motion to Compel Arbitration for the reasons to follow.

**I.**

The Complaint[1] alleges that nonparty Graphite Sales, Inc. ("GSI") and Defendant Radmacher, who is the sole owner of Bond Ceramics, initially worked together in the creation of

---

[1]The Complaint is located at Doc #: 1-1, hereafter referenced as "Complaint" or "Comp."

prototype micro-igniter and automated slip cast machinery used in the manufacture of micro-igniter. (Comp. at 3.) On March 11, 2008, however, GSI and Bond Ceramics entered into a Product and Technology Development Agreement in which GSI engaged Bond's assistance in further developing, designing, engineering and producing silicon nitride igniter of varying voltage. (Id.) Pursuant to the Agreement, GSI owned all rights, title and interest in all project technology and any inventions or improvements made as to the design or operation of the igniter and/or their components, plus an exclusive, royalty-free transferable license to use any new technologies incidental thereto. (Id. at 4.) Bond was under a continuing duty to transfer all rights to GSI and to assist GSI in technology transfers. (Id.) GSI purchased equipment and otherwise invested more than $300,000 in the development project. (Id.)

As is relevant to this case, the Agreement contains a lengthy, detailed Arbitration provision in which GSI and Bond Ceramics "agree[d] to submit to arbitration any dispute related to this Agreement and agree[d] that the arbitration process shall be the exclusive means for resolving disputes which the Parties cannot resolve." (Id. at 30.)

GSI subsequently assigned its rights, title and interest in the Agreement to its affiliate, Plaintiff Surface Igniter, pursuant to an Assignment and Assumption of Product Technology Development Agreement effective August 24, 2011. (Id. at 33-34.)

On April 5, 2013, the parties held a meeting at which time it appeared that progress may be at hand, and left the meeting with action items for work going forward. (Id. at 37.)

On April 12, 2013, however, Radmacher faxed a letter to Surface Igniter terminating the Agreement. (Comp. at 4.) Surface Igniter alleges that Radmacher failed to respond to its phone and email inquiries. (Id. at 5.) Surface Igniter also alleges that it has learned through

-2-

"intermediaries" that Radmacher has moved machinery out of Bond's facilities to an unknown location, and that all technology, prototypes, and documentation related to five years of work is unlawfully in Radmacher's sole possession.

Accordingly, on May 29, 2013, Surface Igniter filed a Demand for Arbitration in the American Arbitration Association ("AAA") against Bond Ceramics, asserting the following claims: breach of contract, misappropriation of trade secrets, conversion, civil theft, promissory estoppel, misrepresentation/omission, unfair and deceptive trade practices, unjust enrichment, spoliation of evidence and declaratory judgment action.

On June 21, 2013, Surface Igniter filed the instant civil action against Radmacher in Geauga County Common Pleas Court under Case No. 13-M-00569. The Complaint alleges the following claims: spoliation of evidence (Count One), conversion (Count Two), misappropriation of trade secrets (Count Three), breach of oral contracts (Count Four), promissory estoppel (Count Five), unjust enrichment (Count Six), alter ego liability (Count Seven), declaratory relief (Count Eight). Radmacher timely removed the case to federal court based on diversity jurisdiction.

On July 25, 2013, Radmacher filed the pending Motion to Compel Arbitration asking the Court to order joinder of this case with the AAA arbitration Surface Igniter has initiated against Bond Ceramics. (Doc #: 3.)

**II.**

The Agreement between Surface Igniter and Bond Ceramics provides that it "shall be governed by and construed and enforced in accordance with the laws of the State of Ohio, without regard to conflict of laws principles thereof."

Ohio policy has long favored arbitration as an efficient and economical alternative dispute resolution mechanism, and Ohio courts apply a strong presumption in favor of arbitration. *Manos v. Vizar*, No. 96 CA 2581-M, 1997 WL 416402, at *1 (Ohio App. 9 Dist. 1997); *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 711-12 (1992); *Kelm v. Kelm*, 68 Ohio St.3d 26, 27 (1993); *Genaw v. Lieb*, 2005-Ohio-807 ¶ 12 (Ohio App. 2 Dist. 2005). Moreover, the federal government has declared a national policy favoring arbitration. *Genaw* 2005-Ohio-807 ¶ 12 (citing the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem. Hosp., v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation. *Henderson v. Lawyers Title Ins. Corp.*, 108 Ohio St.3d 265, 275 (2006). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Household Realty Corp. v. Rutherford*, 2004-Ohio-2422 (Ohio App. 2 Dist. May 14, 2004) (citing *Moses*, 460 U.S. at 24-25)).

"An arbitration clause in a contract is generally viewed as an expression that the parties agreed to arbitrate disagreements within the scope of the arbitration clause; and with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Bentley v. Cleveland Browns Football Co., LLC*, 194 Ohio App.3d 826, 830 (Ohio App. 8 Dist. 2011) (citing *Counsel of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 668 (1998)). However, a party cannot be compelled to submit to arbitration absent an agreement to do so. *Genaw*, 2005-Ohio-807 ¶ 12 (citing *AT&T Technologies v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)).

Ohio state and federal courts have addressed situations in which a party to an arbitration agreement has attempted to sue in court the nonsignatory agent of the other party, and where a nonsignatory agent of a party to an arbitration agreement who is sued by the other party in court seeks to compel arbitration of the claims brought against it. *Genaw*, 2005-Ohio-807 ¶ 13 (citing among other cases *Manos*, 1997 WL 416402; *Lehman v. Detray Investment Group*, No. 3:03 CV 7516, 2004 WL 1474651 (N.D. Ohio 2004); and *Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990)).

In *Manos*, the plaintiffs contracted with a home inspection company to inspect their new home. *Id.*, 1997 WL 416402. The contract contained an arbitration clause stating that "any dispute between the parties shall be settled by arbitration before the American Arbitration Association." *Id.* at *1. The Manoses subsequently sued the company <u>and the inspector</u> for negligence. The state appeals court found that the language in the arbitration clause indicated the parties' intent "to provide a single arbitral forum to resolve all disputes arising as a result of the home inspection." *Id.* The court further held that traditional agency principles "bind a non-party agent to the terms of an arbitration agreement made by his principal if the agent's actions served as the basis for his potential liability." *Id.* at *2. The court concluded that a plaintiff cannot be permitted to avoid a contract to arbitrate a dispute by simply suing an individual nonsignatory agent separately from the contracting employer. *Id.* at *1.

In *Arnold*, the plaintiff purchased stock from a company pursuant to a stock purchase agreement with an arbitration clause. He subsequently sued the company <u>and its officers</u> in federal court alleging securities violations. *Id.*, 920 F.2d 1269. He did so purposely to avoid having to arbitrate his dispute with the company. *Id.* at 1281. The officers moved to compel

-5-

arbitration.  In response, the stock purchaser argued that the arbitration provision could not be enforced by the officers because they were not parties to the agreement.  *Id*. at 1281.  The district court held that, if the stock purchaser "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint, . . . the effect of the rule requiring arbitration would, in effect, be nullified."  *Id*. (quoting *Arnold v. Arnold Corp.*, 668 F.Supp. 625, 629 (N.D. Ohio 1986).  The Sixth Circuit affirmed, concluding that the basic intent of the contracting parties was to have a single arbitral forum for all disputes that arose out of the stock purchase agreement.  *Id*. at 1282.

In *Lehman*, an investor sued her investment advisor in her individual capacity in order to avoid the arbitration clause in account agreements signed by the investor and the investment company.  *Id*., 2004 WL 416402.  Relying on *Arnold*, the Sixth Circuit held that the nonsignatory agent to the arbitration agreement between the investor and the agent's company could enforce the arbitration provision as to the investor.  *Id*., 2004 WL 416402, at *2.  The court noted that this was particularly true where the agent signed the agreement on behalf of the company.  *Id*. at *3.

More recently, in *Genaw*, the plaintiff invested money with an investment firm pursuant to five separate agreements all of which contained arbitration clauses.  *Id*., 2005-Ohio-807.  He sued, in state court, the employee of the firm who managed his accounts and signed one of the agreements on behalf the firm.  The employee filed a motion to dismiss and compel arbitration, arguing that the claims were subject to the mandatory arbitration agreements the plaintiff had signed.  The trial court granted the motion to dismiss.  The state appeals court affirmed, holding that a plaintiff cannot avoid an arbitration agreement by suing nonsignatory agents or signatory

agents in their individual capacity in court. *Id*. ¶ 24. The court explained that to find otherwise would contradict the "strong" state and federal policies favoring arbitration. *Id.*

Here, the parties to the Agreement (and hence the arbitration provision) were originally GSI and Bond Ceramics. By assignment, the parties to the Agreement (and hence the arbitration provision) are Surface Igniter and Bond Ceramics. According to Surface Igniter, Radmacher is the sole owner of Bond who operates and manages Bond in such a way that his acts are the acts of Bond and, by making all of the decisions for Bond, is the only person through whom Bond conducts business. (Comp. at 13.) In other words, Radmacher is a nonsignatory agent of Bond Ceramics through whom Bond conducts it business. The Court finds that Surface Igniter cannot avoid the agreement to arbitrate disputes arising from its contract with Bond Ceramics by suing Bond's nonsignatory agent in his individual capacity. *Manos*; *Arnold*; *Lehman*; *Genaw*. *See also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 7 F.3d 110, 1121-22 (3rd Cir. 1993) (signatories may not circumvent their promise to arbitrate their disputes by suing nonsignatories separately from arbitration).

Surface Igniter argues that it should be permitted to sue Radmacher in his individual capacity because he refused to be a named party to the Agreement five years ago. Radmacher refused to be a party to the Agreement because he did not want to be held personally liable in the future for Bond Ceramics' obligations under the Agreement. Yet Surface Igniter now seeks to hold Radmacher personally liable for Bond's obligations. This makes no sense, is contrary to clear case law, and eviscerates state and federal policy favoring arbitration. The Court finds that the broadly worded arbitration provision reflects the intent of GSI, Surface Igniter, Bond Ceramics *and Radmacher* to provide a single arbitral forum to resolve all disputes arising from

the Agreement. As the nonsignatory agent of Bond Ceramics, Radmacher is entitled to enforce the arbitration clause against Surface Igniter.

## III.

For these reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration (**Doc #: 3**). Based on this ruling, the Motion to Stay is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

 */s/ Dan A. Polster     September 18, 2013*
**Dan Aaron Polster**
**United States District Judge**